1

2

3                                                    O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                            )
11   ROSARIO VELASCO, AN       )   Case No. CV 13-05251-VAP
     INDIVIDUAL; JESUS         )   (DTBx)
12   GARCIA, AN INDIVIDUAL,    )
                               )   **ORDER GRANTING DEFENDANTS'**
13              Plaintiff,     )   **MOTION TO DISMISS FOR FORUM**
                               )   **NON CONVENIENS**
14      v.                     )
                               )   **[Motion filed on November**
15   AMERICANOS USA, LLC, A    )   **12, 2013]**
     TEXAS CORP., GREYHOUND    )
16   LINES, INC., A DELAWARE   )
     CORP., et al.,            )
17                             )
                Defendants.    )
18   _____)

19

20       Before the Court is a Motion to Dismiss or

21   Conditionally Stay for Forum Non Conveniens ("Motion" or

22   "Mot.") (Doc. No. 16) filed by Defendants Greyhound

23   Lines, Inc. and Americanos USA, LLC (collectively, the

24   "Greyhound Defendants") and Defendants Omnibus Americanos

25   S.A. de C.V., Autobuses Americanos S.A. de C.V., Grupo

26   Estrella Blanca, Roja Flecha Corporation, Juan Carlos

27   Castillo Sanchez, and Ceasar Portillo (collectively, the

28   "Grupo Defendants").  Defendants also filed a Motion to

1  Stay Discovery (Doc. No. 27).  This matter came before

2  the court for hearing on January 6, 2014.  The Court has

3  considered all of the papers file in support of, and in

4  opposition to, the motions.  For the reasons stated

5  below, the Court GRANTS the Motion to Dismiss for Forum

6  Non Conveniens, and dismisses this action, with

7  conditions as described below.[1]  As the Court dismisses

8  this action on the basis of the forum non conveniens

9  doctrine, the Court DENIES the Motion to Stay Discovery

10 as MOOT.

11

12 **I.  BACKGROUND**

13 **A.    Factual Allegations**

14     This case arises out of a bus accident.  Plaintiffs

15 Rosario Velasco ("Velasco") and Jesus Garcia ("Garcia")

16 were passengers on a bus that embarked from

17 Aguscalientes, Mexico enroute to El Monte, California,

18 and was proceeding northbound on National Highway 45, on

19 the Montezuma Villa Ahumada Chihuahua segment, traveling

20 to Ciudad Juarez at approximately 4:30 a.m on May 7,

21 2012.  (Notice of Removal (Doc. No. 1) Ex. A (First

22 Amended Complaint ("FAC")) at ¶ 34; see also Declaration

23 of Hortensia Garcia Perez (Doc. No. 17) at ¶ 3.)  At

24 _____

25      [1]    The Court is permitted to impose conditions on
   defendants when dismissing for forum non conveniens.  See
26 Leetsch v. Freedman, 260 F.3d 1100, 1104 (9th Cir. 2001)
   (holding that, when dismissing for forum non conveniens,
27 conditions may be imposed but are not required).

28

around the kilometer marker "204+000," a white 1989 Ford pickup truck sat abandoned in the road, facing northbound.  (Id. at ¶ 35.)  The bus collided with the truck, causing both Plaintiffs to suffer severe injuries. (Id. at ¶ 36.)  Velasco was in a coma for two days, needed 120 sutures on her face, and her right ear and arm were amputated.  (Id. at ¶ 38.)  Garcia suffered injuries to his arm, hand, back, and neck, lacerations to hisface and forehead, and loss of consciousness.  (Id.)

Plaintiffs allege that the bus had two drivers, operating as "partners," Defendants Juan Carlos Castillo Sanchez ("Sanchez") and Cesar Portillo ("Portillo"). (Id. at ¶ 5.)  According to Plaintiffs, Sanchez was under the influence of alcohol while driving at the time of the accident, which was a contributing cause of the collision.  (Id. at ¶ 48.)

Plaintiffs also make a number of allegations concerning corporate partnerships and other affiliations between the Greyhound and Grupo Defendants.  For example, Plaintiffs allege that the bus  was owned by Defendant Omnibus Americanos S.A. de C.V. ("Omnibus"), and that Omnibus, Greyhound, and Defendant Sistema Internacional de Transporte de Autobusses, Inc.,[2] were in a joint

---

[2]    The moving Defendants claim that the remaining corporate defendant, Sistema Internacional De Transporte (continued...)

1  venture named "Autobuses Americanos."  (Id. at ¶ 2.)
2  Furthermore, Plaintiffs allege that the bus was leased to
3  Omnibus by Roja Flecha Corporation.  (Id.)  According to
4  Plaintiffs, a number of the Defendant corporations "have
5  engaged in and continue to engage in an interwoven series
6  of joint ventures/and or other business relationships to
7  provide bus transportation from the southwestern United
8  States, including California, to destinations in Mexico
9  and back."  (Id. at ¶ 13.)

10

11      Plaintiffs allege that when they purchased their bus
12  tickets they were under the impression they would be
13  traveling on American buses, operated in conjunction with
14  American bus operators, including Defendant Greyhound.
15  (Id. at ¶¶ 62, 73.)  Plaintiffs relied on the implied
16  safety of American-operated buses, but the ambiguous
17  corporate structures and non-transparent operating
18  agreements between the Greyhound Defendants and the Grupo
19  Defendants were misrepresented to them.  (Id. at ¶¶ 63,
20  74.)

21

22  **B.   Procedural History**
23      On or about February 22, 2013, Plaintiffs filed the
24  FAC in the California Superior Court for the County of

25

26  _____

27      [2](...continued)
    De Autobuses Inc., was dissolved a number of years ago.
    (Mot. at 6.)  All further references to "Defendants"
28  refer only to those that filed the Motion.

1   Los Angeles.   The FAC contains six claims: (1)
2   Negligence; (2) Negligent
3   Hiring/Retention/Training/Supervision/ Entrustment;
4   (3) Negligent Misrepresentation; (4) Intentional
5   Misrepresentation (Fraud); (5) Negligence (Agency); and
6   (6) Negligence (Common Carrier).   Plaintiffs' Complaint
7   alleges not only that the driver of the bus was negligent
8   in causing the accident, but also that the Defendants
9   made negligent and intentional representations that
10  "Plaintiffs' travel would be on safe, secure American
11  buses" when Defendants knew those representations were
12  untrue.   (Opp'n at 2.)

13

14       The Defendants removed the action to this Court on
15  July 19, 2013.   (Notice of Removal (Doc. No. 1).)   On
16  November 12, 2103, the Defendants filed the Motion to
17  Dismiss for Forum Non Conveniens.   (Doc. No. 16.)   With
18  respect to the Motion to Stay Discovery, Defendants filed
19  that motion on November 18, 2013.   (Doc. No. 27.)
20  Plaintiffs filed their Oppositions to both motions on
21  December 3, 2013.   (Doc. Nos. 33, 35.)   On December 9,
22  2013, the Defendants filed Replies to the Oppositions.
23  (Doc. Nos. 38, 39.)   Along with the Reply to the forum

24

25

26

27

28

non conveniens motion, the Defendants also filed
Objections to the Declarations filed by the Plaintiffs in
support of their Oppositions.[3]  (Doc. No. 43.)

## II. LEGAL STANDARD

"The principle of *forum non conveniens* is simply that
a court may resist imposition upon its jurisdiction even
when jurisdiction is authorized by the letter of a
general venue statute." <u>Gulf Oil Corp. v. Gilbert</u>, 330
U.S. 501, 507 (1947).  The forum non conveniens doctrine
"is based on the inherent power of the courts to decline
jurisdiction in exceptional circumstances." <u>Paper
Operations Consultants Int'l, Ltd. v. S.S. Hong Kong
Amber</u>, 513 F.2d 667, 670 (9th Cir. 1975).

"To prevail on a motion to dismiss based upon forum
non conveniens, a defendant bears the burden of
demonstrating an adequate alternative forum, and that the
balance of private and public interest factors favors
dismissal." <u>Carijano v. Occidental Petroleum Corp.</u>, 643
F.3d 1216, 1224 (9th Cir. 2011) (quoting <u>Dole Food Co. v.
Watts</u>, 303 F.3d 1104, 1118 (9th Cir. 2002)).  Where the
plaintiffs are citizens of the United States, the
defendants must satisfy a "heavy burden of proof,"

---

[3]   The Court does not find it necessary to rely on
any of the evidence objected to by Defendants in order to
resolve the Motion, and hence does not reach the merits
of these objections.

1  whereas "a foreign plaintiff's choice deserves less

2  deference." <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137,

3  1143 (9th Cir. 2001) (quoting <u>Piper Aircraft Co. v.</u>

4  <u>Reyno</u>, 454 U.S. 235, 254 n. 22 (1981)).

5

6                    **III. FORUM NON CONVENIENS**

7       According to Defendants, Mexico is an adequate

8  alternative forum, and the balance of public and private

9  factors favors adjudication of the Plaintiffs' claims in

10  a Mexican court.  (Mot. at 2.)  Plaintiffs counter that

11  Defendants have not met their burden under the forum non

12  conveniens doctrine to dismiss the case, especially

13  because Plaintiffs here are United States citizens.

14  (Opp'n at 12.)

15

16  **A.    Adequate Alternative Forum**

17       The first factor that the Court must consider in a

18  forum non conveniens analysis is whether there is an

19  "adequate, alternative forum" for the Plaintiffs to bring

20  their claims.  An adequate, alternative forum exists

21  where: (1) defendants are amenable to service of process

22  in the foreign forum and (2) the forum provides plaintiff

23  with a sufficient remedy for his or her wrong.  <u>Dole Food</u>

24  <u>Co., Inc.</u>, 303 F.3d at 1118 (citing <u>Lueck</u>, 236 F.3d at

25  1143 (citing, in turn, <u>Piper Aircraft Co.</u>, 454 U.S. at

26  254 n. 22)).

27

28

**1.   Defendants are Amenable to Service in Mexico**

Five of the Defendants are already subject to
jurisdiction in Mexico because they are Mexican residents
(Sanchez, Portillo, Omnibus, Autobuses Americanos, and
Grupo Estrella Blanca).  (See Mot. at 11 n. 1;
Declaration of Fernando Arturo Gonzales Gonzales
("Gonzalez Gonzalez Decl.") (Doc. No. 25) at ¶¶ 23-24.)
Moreover, Defendants *all* agree to submit to jurisdiction
in Mexico and waive any applicable statute of limitations
that may bar the Plaintiffs' claims.  (Mot. at 11 ("[A]ll
defendants to this action agree to submit themselves to
the jurisdiction of Mexico's courts, and to waive any
applicable statute of limitations . . . .").
Accordingly, this element is satisfied.

**2.   Mexico Would Provide Plaintiffs With a**
      **Sufficient Remedy for Their Wrongs**

Next, Defendants must show that Mexico provides the
Plaintiffs with sufficient remedy for their wrongs.
"Generally, an alternative forum is available
where . . . the forum provides 'some remedy' for the
wrong at issue.  This test is easy to pass; typically, a
forum will be inadequate only where the remedy provided
is 'so clearly inadequate or unsatisfactory, that it is
no remedy at all.'"  Tuazon v. R.J. Reynolds Tobacco Co.,
433 F.3d 1163, 1178 (9th Cir. 2006).  The Ninth Circuit
has held that the inability to assert specific claims,

for example, those pursuant to RICO and the Lanham Act, does not render a forum inadequate.  <u>See</u> <u>Lockman Found.</u> <u>v. Evangelical Alliance Mission</u>, 930 F.2d 764, 768 (9th Cir. 1991).

Arguing that Mexico is an adequate forum, Defendants cite numerous other courts who have so found (<u>See</u> Mot. at 12 (citing, <u>e.g.</u>, <u>Martinez v. White</u>, 492 F. Supp. 2d 1186, 1190 (N.D. Cal. 2007) and <u>Loya v. Starwood Hotels &</u> <u>Resorts Worldwide, Inc.</u>, 583 F.3d 656, 666 (9th Cir. 2009)).  Defendants contend that any argument made by Plaintiffs that litigation outcomes in Mexico would be less favorable to them is not a sufficient basis to find that Mexico is an inadequate forum.  (<u>Id.</u>)

Plaintiffs counter that Defendants have merely argued that Mexico has been declared to be an adequate alternative forum in the past, but such an argument, on its own, has been deemed insufficient by the Ninth Circuit in <u>Alpha Therapeutic Corp. v. Nippon Hoso Kyokai</u>, 199 F.3d 1078, 1090 (9th Cir. 1999).  Plaintiffs rely on the decision in <u>Alpha Therapeutic</u> in vain; this decision was withdrawn by the Ninth Circuit (<u>see</u> <u>Alpha Therapeutic</u> <u>Corp. v. Kyokai</u>, 237 F.3d 1007 (9th Cir. 2001) (withdrawing previous opinion pursuant to a stipulation of the parties)), and therefore has diminished

precedential value.[4]   See United States v. Ruiz, 935 F.2d
1033, 1037 (9th Cir. 1991) ("Ruling on the basis of a
decision that the court knows to have been withdrawn,
however, is sure grounds for reversal.").

Even assuming that Alpha Therapeutic still has
precedential value on the point for which Plaintiffs cite
it, i.e., that courts may not solely rely on previous
rulings that a foreign jurisdiction is an adequate,
alternative forum, as discussed below, the Defendants
provided the Court with an expert declaration concerning
Mexican law.[5]   This declaration suffices to provide the
Court with information concerning Mexican law and the
adequacy of Mexico as a prospective forum should the
Court grant the Motion.   Using this information, the
Court now turns to whether Mexico would be an adequate
forum.

### a.   The Claims Relating to the Accident (Claims One, Two, Five, and Six)

The Court is satisfied that, as to Plaintiffs'
negligence claims relating directly to the accident
itself (claims one, two, five and six), the Defendants

---

[4]   Plaintiffs plainly alerted the Court that the
opinion in Alpha Therapeutic had been withdrawn.

[5]   Defendants did not specifically refer to this
declaration in the text of the Motion, but they did file
it in support of the Motion and the Court has considered
it.

have met their burden that Mexico provides an adequate forum for the adjudication of those claims.  Defendants submitted a declaration from Fernando Arturo Gonzalez Gonzalez, a Mexican attorney, explaining various avenues for recovery as a result of civil litigation in Mexico. (See Gonzalez Gonzalez Decl. at ¶¶ 1, 4.)  According to Gonzalez Gonzalez, "a Mexican court is a competent forum to judge on this matter," and Plaintiffs could recover on multiple theories sounding in tort: "subjective non-contractual liability" and "objective non-contractual liability."  (Gonzalez Gonzalez Decl. at ¶¶ 5, 24.)  He further states that, as a result of a transportation accident, a potential plaintiff may collect damages related to medical expenses, as well as "moral damages" for disfigurement.  (Id. at ¶ 15.)  With respect to related companies, Gonzalez Gonzalez posits that the carrier or transportation company would be liable for its drivers, as would the owner of the vehicle in instances where the owner is not the carrier.  (Id. at ¶ 6.)

Taking Gonzalez Gonzalez's uncontroverted representations about Mexican law into account, the Court is satisfied that Mexican law provides for "'some remedy' for the wrong at issue," as it relates to the liability of carriers for damages caused by their drivers.

**b.   The Misrepresentation Claims (Claims Three and Four)**

The issue of an adequate forum as to the misrepresentation claims (claims three and four), however, is not as easily resolved.  The Plaintiffs alleged in the FAC that together Americanos and Greyhound engaged in various acts of misrepresentation in connection with the booking of Plaintiffs' return trips to the United States.  Plaintiffs alleged that when they booked their return passage on an Americanos-branded bus, they were told that they would be traveling on American-operated buses operated in affiliation with Greyhound, as opposed to Mexican buses; Plaintiffs relied upon these misrepresentations because they thought the Greyhound buses would be safer.  (FAC at ¶¶ 62-66, 73-77.) Gonzalez Gonzalez does not address the misrepresentation action in his declaration, and Plaintiffs do not argue they would be able to recover any discrete damages for the alleged misrepresentation.

Even though Mexican law may not explicitly provide a claim for misrepresentation, however, Plaintiffs' damages as a result of any alleged misrepresentation are the same as those that were caused by any negligence on the part of the carriers, _i.e._, their bodily injuries, emotional distress, and other economic and noneconomic damage suffered as a result of the accident.

Indeed, despite Plaintiffs' attempts to characterize the misrepresentation and the negligence claim as having equal importance, that argument is without merit.  The negligence claim is the central claim, and bears far more importance to the core issues in the case than the misrepresentation claims.

For example, in <u>Loya v. Starwood Hotels & Resorts</u>, plaintiffs filed a wrongful death claim against Starwood after a diving accident in Mexico and also filed a claim for false advertising under Washington state law.  <u>Loya v. Starwood Hotels & Resorts</u>, 2007 WL 1991163, at *7 (W.D. Wash. July 6, 2007).  The District Court noted that the gravamen of the plaintiffs' claims was the wrongful death claim, and that consideration of the wrongful death claim should be central to the Court's analysis.  <u>Id.</u> at *7 n. 5 ("The Court recognizes that Plaintiffs have also sued some Defendants for false advertising . . . But all of Plaintiffs' claims revolve around their main claim that Defendants' negligence caused Mr. Loya's death.  And it is that wrongful death claim that should be the focus of the Court's analysis.").  The Ninth Circuit affirmed the District Court, noting it was not unreasonable to view the wrongful death claim as central because "except for [one claim], all of Loya's claims revolve around the claim that negligence of various people in Mexico caused

1   Ricardo Loya's death."  See Loya, 583 F.3d 656, 666 n. 9

2   (9th Cir. 2009).

3

4       Plaintiffs have not identified any category of

5   damages peculiar to their misrepresentation claim.  Given

6   that the recovery Plaintiffs would be entitled to should

7   they prevail on the misrepresentation claim would

8   compensate them for the same as that they would be

9   entitled to under their negligence theory, it cannot be

10  said that Mexico does not provide "some remedy" for their

11  wrongs.  Thus, Plaintiffs have not "shown that possible

12  recovery on the other tort . . . claims would be 'so

13  clearly inadequate or unsatisfactory that it is no remedy

14  at all,'" to find that Mexico is not an adequate,

15  alternative forum.  Lockman Found., 930 F.2d 764 at 769.

16

17      Accordingly, the Court finds that Mexico would be an

18  adequate, alternative forum.

19

20  **B.   Preliminary Consideration: Plaintiffs' Chosen Forum**

21      "[T]here is ordinarily a strong presumption in favor

22  of the plaintiff's choice of forum, which may be overcome

23  only when the private and public interest factors clearly

24  point towards trial in the alternative forum." Carijano,

25  643 F.3d at 1227; see also Contact Lumber Co., 918 F.2d

26  at 1449 ("[W]hile a U.S. citizen has no absolute right to

27  sue in a U.S. court, great deference is due plaintiffs

28

because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown.") (quoting Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335 (9th Cir. 1984)).

First, the Court notes that Defendants initially questioned the citizenship of the Plaintiffs for diversity purposes. (See Defendants' Evidentiary Objections (Doc. No. 43) at ¶ 1 ("Plaintiff failed to submit credible evidence of his citizenship status [no California Drivers license or ID card, no U.S. Visa, no U.S. Passport, no Permanent or Temporary Resident Card]; nor did he submit any evidence to demonstrate domicile.").)  The FAC states "Plaintiffs . . . at all times herein relevant, were both residents of the County of Los Angeles, State of California."  (FAC at ¶ 27.)

As the FAC did not allege Plaintiffs' domicile or citizenship, the Court ordered Plaintiffs to submit new declarations, with supporting evidence if possible, stating their domicile and citizenship at the time of the accident.  (See Order (Doc. No. 46).)  Plaintiffs filed supplemental declarations, stating they are citizens of the United States, and were California citizens for diversity purposes at the time of the accident.  (See Supplemental Declaration of Rosario Velasco ("Velasco Supp. Decl.") (Doc. No. 47) at ¶¶ 2, 8; Supplemental

Declaration of Jesus Garcia ("Garcia Supp. Decl.") (Doc. No. 48) at ¶¶ 2, 8).)  Plaintiffs attached California driver's licenses and United States passports as exhibits to the supplemental declarations.  (Velasco Supp. Decl. Ex. 2-3; Garcia Supp. Decl. Ex. 2-3.)

As United States citizens, and citizens of California, Plaintiffs' choice of forum in this district is entitled "great deference" which the Court will respect.  Even considering this deference, however, Plaintiffs' citizenship does not, on its own, end the forum non conveniens analysis.  Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir. 1983) ("The presence of American plaintiffs, however, is not in and of itself sufficient to bar a district court from dismissing a case on the ground of forum non conveniens.").  Keeping this deference in mind, and taking care to give Plaintiffs' choice of forum "the appropriate regard," the Court next turns to the private interest factors.  See Neuralstem, Inc. v. ReNeuron, Ltd., 365 F. App'x 770, 771 (9th Cir. 2010) (finding the District Court abused its discretion by failing to weigh the plaintiff's United States residency and choice of forum in the private interest factors analysis).

## C.    Private Interest Factors

The Court next turns to the private interest factors. When assessing a motion to dismiss for forum non conveniens, the private interest factors to be considered include: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." Lueck, 236 F.3d at 1145 (citing Gulf Oil Corp., 330 U.S. at 508 and Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd., 918 F.2d 1446, 1449 (9th Cir. 1990)).  "The district court should look to any or all of the above factors which are relevant to the case before it, giving appropriate weight to each. It should consider them together in arriving at a balanced conclusion."  Id. (internal citations omitted).

When assessing these private interest factors, courts should evaluate "the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum."  Id. at 1146.

1      **1.   Residence of the Parties and Witnesses and the**
2          **Forum's Convenience to the Litigants**
3              **a.   The Parties**
4      As discussed above, the Plaintiffs are citizens of
5  the United States.   Litigation here would be convenient
6  to them, especially because they suffered grave injuries
7  in the accident.   (Opp'n at 17.)   Also, as previously
8  discussed, the Grupo Defendants are citizens of Mexico,
9  and are subject to Mexican jurisdiction.   The remaining
10 Defendants, the Greyhound Defendants, are all citizens of
11 the United States, though none are citizens of
12 California.

14     In accordance with the deference shown to California
15 residents bringing suit in their home district, this
16 factor weighs against granting the Motion.   <u>See</u> <u>Boston</u>
17 <u>Telecommunications Grp., Inc. v. Wood</u>, 588 F.3d 1201,
18 1207 (9th Cir. 2009) (finding the District Court had
19 erred when it held the private interest factor concerning
20 the parties' residence was "neutral" when plaintiffs were
21 United States citizens and also noting that if plaintiff
22 were a California citizen, he would have been "in a
23 stronger position.").

25             **b.   The Witnesses**
26     Defendants contend the vast majority of the witnesses
27 will likely be found in Mexico.   Those witnesses include:
28

the bus drivers, the accident investigators, the police and medical personnel who initially responded to the scene, and personnel who ultimately cared for the passengers in medical facilities, the owner of the abandoned truck, the ticket agent who sold the bus tickets to Plaintiffs in Mexico, executives and managers of the Mexican bus companies, and "Mexican engineers and public works professionals." (Mot. at 14-16.)

Plaintiffs disagree, and argue the majority of the relevant witnesses are located in the United States. Those witnesses include: the Plaintiffs, their daughter, Nora Martinez, who will testify she made a telephone call to inquire about what company operated the bus and how tickets were purchased, Gilberto Rosales,[6] a fellow bus passenger and California resident who has also filed a lawsuit in connection with the bus accident, and executives of the Greyhound Defendants. (Opp'n at 14-15.) Moreover, Plaintiffs contend the citizenship of the driver of the white truck is unknown, because he or she has yet to be identified, and furthermore that Defendants' contention that Mexican engineers and public works professionals are necessary is spurious. (Id.)

---

[6]   While Plaintiffs state Gilberto Rosales is a "key percipient witness," they provide no detail as to what he would testify to, or even if he has any recollection of the accident. (See Opp'n at 15.)

1     The Court finds that the majority of the material
2  witnesses to Plaintiffs' negligence claims reside in
3  Mexico, principally the Defendant bus drivers, the
4  accident investigators, and the first responders to the
5  scene of the accident; Sanchez, the bus driver, is likely
6  the most important of any of the witnesses.  Sanchez's
7  testimony concerning what he saw leading up to the
8  accident, his rate of speed at the time of he accident,
9  his state of fatigue -- including the last time he
10 relinquished the wheel to his partner driver, Castillo --
11 and if he was under the influence of alcohol at the time
12 of the crash, are all critical to Plaintiffs' case.  So
13 too is the testimony of the accident reconstruction
14 expert.  The accident reconstruction expert's testimony
15 will either support or contradict Sanchez's accounting of
16 events leading up to the collision with the white truck.
17
18    The police and medical personnel who responded to the
19 crash are the closest thing to third party percipient
20 witnesses in this case.  They will be able to give
21 testimony about the scene immediately after the crash.
22 Any statements from the passengers or from the drivers
23 would have been made to these first responders.
24
25    Plaintiffs attempt to diminish further the
26 materiality of these and other foreign witnesses, arguing
27 that "the damages evidence in Mexico is limited to a
28

brief 24 hour period for Mr. Garcia and a 48 hour period for Ms. Velasco, and limited to a handful of paramedics and attending doctors at the Mexican hospital." (Mot. at 17.)  But the time period immediately after the collision is of paramount importance to Plaintiffs' case, and cannot be discounted.  Though Plaintiffs would rather the Court focus on the numerous American executives present in the United States whose testimony would be relevant to their claims for misrepresentation, the importance of such testimony would easily be dwarfed by the relevance the testimony of the bus driver, accident reconstruction experts, and first responders.  As all of those witnesses reside outside of the United States, this forum is not convenient.

     In sum, the residence of the parties to the action strongly weighs against granting the Motion, as Plaintiffs' choice of forum is entitled to deference. But the vast majority of the material witnesses are all located in Mexico, which weighs in favor of granting the Motion.

     **2.   Access to Physical Evidence and Other Sources of Proof**

     Defendants contend that, because the accident occurred in Mexico, and much of the physical evidence, documentary evidence, and witnesses are in Mexico, this

factor weighs in favor of dismissal.  (Mot. at 16.)  For
example, the scene of the accident, the bus, and the
truck the bus collided with, and many material witnesses
are all located in Mexico, as are the employment records
and training records of the drivers, the police reports,
and the accident reconstruction reports, and the
personnel who generated those documents.  (Id.)

Plaintiffs counter that the police records have
already been made available to all parties and translated
into English.  (Opp'n at 18 ("All photographs, documents,
reports, and records of the Mexican police have been
produced to all parties, and have been translated [in]to
English.").)

Even if the police records have been made available
to all parties and have been translated into English,
however, the majority of the other evidence and records
are still located in Mexico.  Most importantly, the
wreckage of the bus and the accident scene itself are in
Mexico.  (See Declaration of Arturo Martinez Rivas
("Rivas Decl.") (Doc. No. 25) at ¶ 7 ("The autobus in
question . . . was at the time of the accident, owned and
operated by OMNIBUS.  OMNIBUS maintains possession and
control over the autobus here in Mexico.").)  Plaintiffs
contend that because Omnibus has made the bus available

for inspection to all parties to the litigation, this factor is at best neutral.  (Opp'n at 18.)

Courts have recognized in aviation accident cases, however, that this factor almost always favors dismissal, because the accident wreckage is likely located outside the United States, along with other witnesses and evidence.  See Harp v. Airblue Ltd., 879 F. Supp. 2d 1069, 1077 (C.D. Cal. 2012).  The situation here is analogous: the wreckage of the bus and the truck it collided with are both located in Mexico.  It would be difficult and costly to make that evidence available in California.

Accordingly, the Court finds that this factor weighs in favor of dismissal.

### 3. Whether Unwilling Witnesses Can Be Compelled to Testify

"Dismissal on the grounds of forum non conveniens may be appropriate when the court finds 'critical witnesses' to the litigation are beyond its jurisdictional reach." Kinjo v. Champion Shipping AS, 2010 WL 3069343, at *6 (E.D. Cal. Aug. 4, 2010) (citing In re Air Crash Over Taiwan Straits on May 25, 2002, 331 F. Supp. 2d 1176, 1200 (C.D. Cal. 2004)).

1    Defendants contend this factor also weighs in favor
2  of dismissal, because all of the witnesses residing in
3  Mexico are beyond the reach of subpoena.  (Mot. at 17.)
4  According to Defendants "[t]he specter of Hague discovery
5  is by itself strong grounds for [forum non conveniens],"
6  citing In re Air Crash at Madrid, Spain, on August 20,
7  2008, 893 F. Supp. 2d 1020, 1032 (C.D. Cal. 2011).

8

9    Plaintiffs, on the other hand, argue that because
10 Defendants did not allege that any witnesses are
11 unwilling to testify and instead merely "identifi[ed]
12 categories of witnesses it intends to call who are
13 outside of its control" they have not met their burden as
14 to this factor.  (Opp'n at 19 (citing Carijano, 643 F.3d
15 at 1231).)

16

17   First, the Court disagrees with Defendants that the
18 District Court's inability to compel live testimony, and
19 instead requiring litigants to rely on deposition
20 testimony pursuant to the Hague Convention on the Taking
21 of Evidence Abroad in Civil or Commercial Matters, is per
22 se evidence that this factor favors dismissal.  "'Any
23 court . . . will necessarily face some difficulty in
24 securing evidence from abroad,' but these complications

25

26

27

28

do not necessarily justify dismissal." <u>Boston</u>
<u>Telecommunications</u>, 588 F.3d at 1208 (9th Cir. 2009)
(quoting <u>Tuazon</u>, 433 F.3d at 1181).

Indeed, the Court in <u>Madrid</u> undertook a lengthy
analysis of this factor, despite its acknowledgment that
"courts have noted" the shortcomings of the Hague
Convention as a means of discovery.  <u>Madrid</u>, 893 F. Supp.
2d at 1032.  There, the District Court found this factor
only "slightly favored" dismissal.

On the other hand, the Court also disagrees with
Plaintiffs that the Ninth Circuit's holding in <u>Carijano</u>
compels the Court to find Defendants' evidence concerning
witness unavailability is insufficient.  In <u>Carijano</u>, the
Ninth Circuit reversed the District Court's grant of a
forum non conveniens motion in part because the court did
not correctly analyze this factor.  According to the
Ninth Circuit, the District Court erred when it found
this factor to be in favor of dismissal, despite the fact
that the defendant did not contend any witness was
unwilling to testify *and* because the court failed to
consider evidence that five of the defendant's former
employees indicated their willingness to testify.
<u>Carijano</u>, 643 F.3d at 1231.

1    Here, Defendants have provided evidence that at least
2   some witnesses are unwilling to appear at trial.   Arturo
3   Rivas, legal manager of Grupo, stated in his declaration
4   that "to require individuals to travel to the United
5   States for this lawsuit would impose great difficulties
6   and hardship on me [and] my business . . . it is likely
7   that certain witnesses will be unable or unwilling to
8   travel to the United States . . . ."   (Rivas Decl. at
9   ¶ 8.)   Plaintiffs, on the other hand, have given no
10  indication that any of the critical witnesses are willing
11  to testify.

12

13    Accordingly, as Defendants have shown that multiple
14  witnesses would be unwilling to testify in the United
15  States and the Court cannot compel their appearance, this
16  factor weighs in favor of granting the Motion.   See
17  Kinjo, 2010 WL 3069343, at *6 ("Further, where all
18  witnesses to liability are located in a foreign forum and
19  where a court would be aided by familiarity with the
20  local landscape and easy access to the site of an
21  accident, it may be 'unfair' to make foreign defendants
22  proceed to trial in a United States forum.") (quoting
23  Piper, 454 U.S. at 1199).

24

25    **4.   Costs of Bringing Witnesses to Trial**
26    With respect to the costs of bringing witnesses to
27  trial, this factor also supports dismissal.   As discussed
28

1  above, the witnesses central to Plaintiffs' negligence

2  claims are all located outside of the United States; the

3  costs of bringing them to trial would be substantial,

4  whereas the costs would likely be smaller if this action

5  was brought in Mexico, closer to the majority of the

6  material witnesses and to the accident site itself.  <u>See</u>

7  <u>id.</u> ("the majority of witnesses to the accident, rescue,

8  and subsequent investigation are located in Hong Kong or

9  Southeast Asia.  As such, the cost of bringing witnesses

10 to trial would be substantially less if the claims were

11 litigated in Hong Kong.").

12

13     Plaintiffs claim that because some of the Defendants

14 are bus companies, they have access to cost-free

15 transportation of any witnesses from Mexico.  (Opp'n at

16 20.)  The Defendants' resources, however, are immaterial.

17 <u>See</u> <u>Vivendi S.A. v. T-Mobile USA, Inc.</u>, 2008 WL 2345283,

18 at *13 (W.D. Wash. June 5, 2008) <u>aff'd sub nom.</u> <u>Vivendi</u>

19 <u>SA v. T-Mobile USA Inc.</u>, 586 F.3d 689 (9th Cir. 2009)

20 ("As Defendants point out, the fact that the Defendants

21 have substantial resources to pay the costs of bringing

22 the witnesses to trial does not mean that the court

23 should impose upon them the burden of litigating in an

24 otherwise inconvenient forum.") (citation omitted).

25

26

27

28

1   Though there will be travel required to maintain this
2   action in either forum, it will be decidedly less costly
3   to have the Plaintiffs, their daughter, and American
4   executives travel to Mexico, than the alternative of
5   having the two bus drivers, the accident investigators,
6   the police officers, medical personnel, and Mexican
7   executives travel to the United States.  Accordingly,
8   this factor weighs in favor of dismissal.
9
10      **5.  The Enforceability of the Judgment**
11      This factor is neutral.  Defendants argue this factor
12  favors dismissal because "[t]here is no bilateral treaty
13  or multilateral international convention in force between
14  the United States and any other country on reciprocal
15  recognition and enforcement of judgments."  (Mot. at 19
16  (quoting U.S. Department of State, Law & Policy,
17  "Enforcement of Judgments" (2013), available at
18  http://travel.state.gov/law/judicial/judicial_691.html).)
19
20      Plaintiffs respond that a United States judgment can
21  be enforced in Mexico through the "homologacion"
22  process.[7]  (Opp'n at 20.)  Plaintiffs also fault
23  Defendants for failing to have Gonzalez Gonzalez, their
24
25  _____
26      [7]   As support for this assertion, Plaintiffs attach
    an article obtained from the internet, which appears to
27  be a white paper available on a law firm's website.  The
    Court attaches very little weight to this piece of
28  evidence.

Mexican law expert, provide the Court with any information on the subject.  (Id.)

As neither party presents any persuasive evidence as to this factor, the Court finds it is neutral.

### 6.   Practical Problems

Defendants present two practical problems, essentially in passing, neither of which is particularly compelling.[8]  Grupo and Greyhound contend they have an "inter-line" agreement, which allows them to sell each other's tickets, but limits the ability to seek indemnification for damages occurring on the other company's lines.  This agreement requires suits brought concerning accidents occurring on Mexican soil to be adjudicated in Mexico.  To the extent this argument has any bearing on this factor at all, it only slightly supports dismissal.

Thus, while Plaintiffs have brought suit in their home forum, and litigation here would undoubtedly be convenient to them, the remainder of the private factors, with the exception of the one that is neutral, weigh in favor of granting the Motion.  The material witnesses and

_____

[8]    Defendants also contend that a forum selection clause on the back of Plaintiffs' tickets requires this action to be brought in Mexico, but makes no serious argument that it should be enforced.  (See Mot. at 19; Opp'n at 21-22; Reply at 7.)

the most critical evidence is located in Mexico.
Moreover, the Court cannot compel those witnesses to
testify, and even if those witnesses came willingly, the
costs would be substantial in comparison to litigating
their claims in Mexico.

The Court now turns to the public interest factors.

**D.   Public Interest Factors**

In addition to the private interest factors, the
Court considers public interest factors, which include:
"(1) the local interest in the lawsuit, (2) the court's
familiarity with the governing law, (3) the burden on
local courts and juries, (4) congestion in the court, and
(5) the costs of resolving a dispute unrelated to a
particular forum."  Boston Telecommunications, 588 F.3d
at 1211 (citing Tuazon, 433 F.3d at 1181).

**1.   Local Interest in the Lawsuit**

There is a split of authority in this Circuit as to
what can be considered when addressing this factor.
Carijano, 643 F.3d at 1233 n. 3 (9th Cir. 2011) ("There
appears to be a difference of opinion about whether it is
appropriate to compare the state interests, or whether
this factor is solely concerned with the forum where the
lawsuit was filed.").

1    Under the first view, the Court need "ask only if
2  there is an identifiable local interest in the
3  controversy, not whether another forum also has an
4  interest." <u>Tuazon</u>, 433 F.3d at 1182.  Conversely, under
5  the latter view, the Court should balance the foreign
6  forum's interest in the litigation with the domestic
7  forum's.  <u>See</u> <u>Lueck</u>, 236 F.3d at 1147 (comparing effects
8  on litigation in New Zealand and Arizona).
9
10          **a.  Local Interest Only**
11    Assessing the local interests under the first view,
12  California clearly "has a strong interest in ensuring the
13  welfare of its residents, U.S. citizens and non-citizens
14  alike." <u>Tuazon</u>, 433 F.3d at 1182 (citing <u>Piper Aircraft</u>,
15  454 U.S. at 257).  Given this, it is likely that
16  California courts have an identifiable interest in the
17  litigation, which can justify proceeding in spite of the
18  other public factors discussed below. <u>Carijano</u>, 643 F.3d
19  at 1232.[9]
20
21
22
23
24 _____
25         [9]    At least one California court, however, has
   found that, on similar circumstances in this case -- a
   California resident suing a foreign company in California
26  for an automobile accident that occurred in a foreign
   jurisdiction -- that the mix of private and public
27  factors still favored granting a motion on forum non
   conveniens grounds.  <u>See</u> <u>Girard v. Hilton Int'l Co.</u>, 2003
28  WL 22346401 (Cal. App. Oct. 15, 2003) (unpublished).

**b.   Balancing of Local Interests**

Here, California residents are suing defendants mostly composed of foreign companies and individuals, as well as American companies, over conduct that occurred in Mexico.  Mexico, therefore, also has a substantial interest in this case, as "Mexico has an interest in holding businesses operating in Mexico accountable and insuring that foreign tourists are treated fairly." Starwood Hotels & Resorts, 2007 WL 1991163, at *9.  Given that the core of the Plaintiffs' case are their claims of negligence, Mexico likely has a stronger interest, on balance, in this case.  Id.

But because Ninth Circuit law is unclear whether the Court should consider only California's interest or if the Court should compare California and Mexico's interests, the Court can only say that this factor is neutral.

**2.   The Court's Familiarity With the Governing Law**

Both parties appeared to agree that Mexican law will apply as it relates to Plaintiffs' negligence claims, as the applicability of Mexican law was discussed in Motion and the Opposition.  (Mot. at 21-22 (discussing applicability of Mexican law); Opp'n at 24-25 (discussing

how Mexican law is analogous to California law)).[10]  At

the hearing, however, Plaintiffs' counsel noted they did

not concede that Mexican law would apply to Plaintiffs'

negligence claims.

"The mere likelihood or possibility that foreign law

would apply weighs in favor of dismissal." <u>Madrid</u>, 893

F. Supp. 2d 1020, 1040 (citing <u>Lueck</u>, 236 F.3d at 1148 n.

6 ("[B]ecause New Zealand law is *likely* to apply in this

suit, the choice of law determination weighs in favor of

dismissal.")).  On the other hand, "a finding that

foreign law applies does not mandate dismissal." <u>Taiwan</u>

<u>Straits</u>, 331 F. Supp. 2d at 1206 (citing <u>In re Disaster</u>

<u>at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980</u>, 540 F.

Supp. 1141, 1153 (D.D.C. 1982)).

Here, this factor weighs only slightly in favor of

dismissal.  Plaintiffs argue the Mexican Vehicle Code

provisions that would be at issue in their negligence

claims are analogous to the California Vehicle Code.

(Opp'n at 24.)  Even if this were so, the Court is

unfamiliar with the Mexican Vehicle Code; there is no way

of telling, at this point, the breadth of possible

statutes that could be implicated during the litigation.

And while the Court does not take issue with Plaintiffs'

_____

    [10]   Plaintiffs also state that the Court is familiar
in applying California law to their misrepresentation
claims.  (Opp'n at 25.)  Defendants do not dispute this.

assertion that federal courts routinely apply foreign law
(see id.), this factor still weighs in favor of
dismissal.

### 3. Burden on Local Courts and Juries, Congestion in the Court, and the Costs of Resolving a Dispute Unrelated to a Particular Forum

This factor also favors dismissal. Neither party
devoted much space in their papers addressing this
factor. Defendants maintain this factor carries little
weight in any event. (Opp'n at 25 (citing Gates Learjet,
743 F.2d at 1337 ("The real issue is not whether a
dismissal will reduce a court's congestion but whether a
trial may be speedier in another court because of its
less crowded docket.")).)

Even with no information presented by either party
concerning the ability of Mexican or American courts to
resolve this case, the alleged negligence occurred
outside the United States, and was committed by foreign
citizens. Hearing the case in this Court will unfairly
burden California jurors, requiring them to hear a case
in which only connection to California relating to the
central claims in the case, i.e., the negligence claims,
is the citizenship of the Plaintiffs.

1    Thus, in analyzing the public interest factors, most
2    of the factors counsel in favor of granting the Motion,
3    including the Court's lack of familiarity with the
4    governing laws of Mexico and the burden this litigation
5    would place on California jurors.  The factor concerning
6    the local interest in the lawsuit, the analysis of which
7    is uncertain under current Ninth Circuit law, is neutral,
8    as are the remaining factors unaddressed by the parties.
9    On the whole, however, the public interest factors favor
10   dismissal.

11

12   In finding that the Motion should be granted, the
13   Court recognizes that, as United States citizens bringing
14   suit in their local forum, Plaintiffs' choice of forum is
15   entitled to great deference.  Furthermore, the Court does
16   not take lightly the conclusion that United States
17   citizens will be deprived of their ability to litigate in
18   a United States court of their choosing.  But the facts
19   of this case typify the rare instance in which a
20   plaintiff's claims are too attenuated to maintain their
21   action in the United States and that such claims are so
22   vexatious and oppressive as to be out of proportion with
23   the convenience of the Plaintiffs.

24

25

26

27

28

# IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion and dismisses this action for forum non conveniens.  The pending Motion for Protective Order Staying Discovery (Doc. No. 27) is DENIED as MOOT.

The Court imposes the following conditions on this dismissal:

(1) Defendants agree to submit to the jurisdiction of a Mexican court if this action is filed by Plaintiffs there;

(2) Defendants agree to toll days any applicable statute of limitations that may bar Plaintiffs' claims in Mexico for 120 days from the date the mandate is issued in any appeal of this Court's order of dismissal, or if no appeal is taken from this Order, for 120 days from the date of the judgment in this action;

(3) Defendants agree to satisfy any judgment obtained in Mexico, subject to applicable appellate rights; and

(4) Defendants agree to produce, upon reasonable notice, all witnesses employed by the Defendants who are reasonably necessary for purposes of discovery and trial, with any disputes regarding attendance of any such witnesses to be resolved in the Mexican court(s) where the action is pending.

1    At the hearing on this Motion, counsel for Defendants
2 agreed on the record, on behalf of their respective
3 clients, to each of these conditions.

4

5    **IT IS SO ORDERED.**

6

7

8 Dated: January 10, 2014_____
                                VIRGINIA A. PHILLIPS
9                        United States District Judge

37